UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

A.R., as Parent and Natural Guardian
of N.B., a Minor,

                 Plaintiff,                    12 Civ. 7144

   -against-                            OPINION

NEW YORK CITY DEPARTMENT OF
EDUCATION, et al.,

                 Defendants.

------------------------------------X



A P P E A R A N C E S:

      Attorneys for Plaintiff

      LAW OFFICE OF ANTON PAPAKHIN
      1359 Coney Island Avenue
      Brooklyn, NY 11230
      By:  Anton Papakhin, Esq.

      ARTHUR BLOCK ATTORNEY AT LAW
      437 Madison Avenue, 29th Floor
      New York, NY 10022
      By:  Arthur R. Block, Esq.

      Attorneys for Defendant

      MICHAEL A. CARDOZO
      CORPORATION COUNSEL OF THE CITY OF NEW YORK
      100 Church Street
      New York, NY  10007
      By:  Eric Porter, Esq.

**Sweet, D.J.**


The defendant New York City Department of Education ("DOE" or the "Defendant") has moved pursuant to Fed. R. Civ. P. 12(c) ("Rule 12(c)") to dismiss the complaint ("Complaint") of Plaintiff A.R. (the "Plaintiff") for lack of subject matter jurisdiction.  The Complaint has asserted a claim for special education appeal (the "First Claim") and a claim for failure to comply with an administrative order (the "Second Claim").  Upon the conclusions set forth below, the motion of the DOE is denied.


The resolution of this motion requires the Court to parse the procedures by which the DOE determines the special educational needs of an individual and the scope of its limited review powers to seek a resolution which has thus far evaded the parties, both ably represented by skilled counsel.  As issue is the cost of one half year of tuition for the student N.B. at a residential facility in Massachusetts, an issue which most regrettably will not be resolved by the disposition of the present motion, which is characterized by the DOE as raising a jurisdictional issue and by the Plaintiff as seeking a windfall.

1

**Prior Proceedings**

Plaintiff A.R. initiated this action on September 21, 2012, on behalf of N.B., her granddaughter and a student with a disability, seeking, *inter alia*, tuition funding pursuant to the Individuals with Disabilities Education Improvement Act ("IDEA") in the amount of $129,080.30, the full cost of N.B.'s tuition for a six month period at the Judge Rotenberg Center ("JRC"), a residential facility located in Massachusetts, at which Plaintiff unilaterally placed N.B. for the latter half of the 2011-12 school year ("SY"). The First Claim of the Complaint is an appeal from an administrative decision by the New York State Education Department's Office of State Review, in which the State Review Officer ("SRO") determined that JRC was not an appropriate placement for N.B. The Second Claim is brought pursuant to the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 (the "Rehabilitation Act") seeking a remedy for the failure of the DOE to comply with an order of the Impartial Hearing Officer ("IHO").

The instant motion was heard and marked fully submitted on April 24, 2012.

2

**The Administrative Process**

On May 17, 2011, the DOE convened a meeting of the Committee on Special Education ("CSE") to formulate an Individualized Education Program ("IEP") for N.B. for the 2011-12 SY.  The meeting was attended by Annette Standford, special education teacher and related service provider; Marie Surpris Addo, district representative; Elizabeth McCollough Wilson, school psychologist; Lizette Velez, counselor; and Plaintiff. The CSE classified N.B. as learning disabled, and recommended that she be placed in an Integrated Co-Teaching ("ICT") classroom in a community school, and provided with one 30 minute counseling session per week.  N.B. subsequently began attending ninth grade at Transit Tech High School ("Transit"), a DOE public high school, in September of 2011.

Plaintiff thereafter submitted a Due Process Complaint ("DPC") to the DOE dated October 7, 2011 requesting an impartial hearing.  In her DPC, Plaintiff challenged the adequacy of the program recommended in the IEP, and sought "immediate residential placement at JRC," or, in the alternative, "direct . . . tuition funding" at JRC for the 2011-12 SY.  Plaintiff did

not challenge N.B.'s classification as learning disabled in her DPC.

The hearing before the IHO was held on December 16, 2011, at which time N.B. continued to attend Transit and had not yet been admitted to JRC.  Plaintiff testified at the hearing, along with a representative from JRC and the assistant principal at Transit.

During the hearing, Plaintiff's counsel, Mr. Anton Papakhin. Esq. ("Papakhin"), repeatedly acknowledged that N.B. was not currently attending JRC and that Plaintiff, despite the relief sought in the DPC, was accordingly not in fact seeking tuition funding pursuant to the *Burlington/Carter* three prong test.  Papakhin stated that "this is not a tuition reimbursement case. The parent has not signed a contract with the private school obligating her to pay the tuition."  Papakhin also stated that Plaintiff is "asking for placement" at JRC, and further clarified that Plaintiff is "not asking for placement for three years in a row. [Plaintiff is] not asking for placement even until the end of the school year. The child will be placed at [JRC] and then the district can reconvene at any point of time to change the program recommendation."  During his closing

4

statement, Papahkin again reiterated that "this is not a
Carter/Burlington reimbursement case where the parent has placed
the child in the private school at a financial risk, cosigned
the contract, and so forth . . . this is not a three-prong test
case."

Following the conclusion of the IHO hearing but prior
to the issuance of the IHO's decision, Plaintiff unilaterally
removed N.B. from Transit and enrolled her at JRC, beginning on
December 29, 2011.

The IHO issued a decision on January 20, 2012.  While
the IHO found that the DOE had not offered N.B. a free and
appropriate public education ("FAPE") for the 2011-12 SY, she
also determined that the record did not support a finding that
JRC, an out-of-state residential facility in Massachusetts, was
N.B.'s Least Restrictive Environment ("LRE"), and therefore
denied Plaintiff's request to place N.B. there temporarily
pending the CSE reconvening to develop a new IEP.  The IHO did,
however, order the DOE to re-evaluate N.B. within 14 days of the
decision (assuming the DOE and Plaintiff did not agree that the
Plaintiff's additional evaluative materials submitted during the
hearing were sufficient to guide the CSE in creating a new IEP

recommendation), and to reconvene a new IEP meeting "within seven days of the completion of those evaluations." The IHO further directed that the CSE, in developing the new IEP, must consider all the testimony and evidence submitted by Plaintiff at the hearing, allow Plaintiff to include any mental health or education professionals in the meeting whom she deems necessary to develop an appropriate program, and "tak[e] into consideration both non-public day and residential programs."

Following its receipt of the IHO decision, DOE contacted Papakhin on January 24, 2012, to confirm with him which evaluative materials the Plaintiff had submitted during the IHO hearing. Papakhin replied that N.B. "was already placed at JRC," that the "JRC treatment team will participate by phone at the meeting," and that Plaintiff "will be appealing this Decision and Order to the extent that the IHO did not award the parent tuition funding for residential placement at JRC."

On January 27, 2012, DOE advised Papakhin that it had determined that Plaintiff's evaluative materials were insufficient, and would therefore arrange for N.B. to be reevaluated before February 3, 2012, the deadline set by the IHO. The DOE informed Mr. Papakhin that it "will be unable to

6

conduct these evaluations by February 3 if the student is not made available. In addition, the reconvene of the IEP cannot be held until such evaluations are completed."

Also on January 27, 2012, the DOE provided a notice, by hand, to Plaintiff, who signed the notice to indicate her receipt. The notice scheduled an evaluation for N.B. for the following Thursday, February 2, at 8:00 a.m. at Transit.3 Plaintiff wrote on the notice, "I give permttiom [sic] my daug [sic] [D.R.] to come Thruday [sic] in my place." Despite receiving notice of this evaluation, neither Plaintiff, her daughter D.R., or N.B. attended the evaluation on February 2, 2012.

Thereafter, on February 8, 2012, Plaintiff served DOE with a Notice of Intention to Seek Review ("NOISR"), indicating that she intended to appeal the IHO decision to the SRO.

Plaintiff's petition to the SRO requested that the SRO "reverse the IHO to the extent that she did not award tuition at JRC and direct [DOE] to pay the cost of [N.B.'s] tuition from the date of her enrollment on December 29, 2012 until June 30, 2012."

7

The SRO decision, dated May 24, 2012, denied the relief Plaintiff requested and dismissed her appeal.  The SRO determined that the record supported a finding that JRC was not N.B.'s LRE.  Further, the SRO found that the Plaintiff had not challenged N.B.'s disability classification, and that JRC was not State-approved to provide educational services to children, like N.B., classified as learning disabled.

The SRO concluded that the IHO was therefore correct to remand the matter to the CSE.  The SRO also determined that Plaintiff's request for tuition reimbursement or direct payment of the student's tuition at JRC was not yet ripe for review because the parent had not removed N.B. from public school, the parent had not unilaterally placed N.B. at JRC, and the parent was not obligated to pay the costs of N.B.'s tuition at JRC for the 2011-12 SY, and therefore the IHO lacked jurisdiction over the issue.

The SRO additionally concluded, citing Papakhin's statements during the IHO hearing, that Plaintiff had "abandoned tuition reimbursement and direct payment of the student's tuition at JRC as relief."

8

On June 18, 2012, the CSE held an annual IEP review for the 2011-2012 SY.  The CSE members not only voiced their agreement with the Parent but also issued an IEP recommending that N.B. be placed in a twelve month residential program in a New York State approved non-public school ("NPS"). Since July 1, 2012, the beginning of the 2012-13 twelve month school year, N.B. has been receiving free appropriate public education ("FAPE") through Defendant's funding of her placement at the JRC.[1]

## The Statutory Scheme and the *Burlington/Carter* Test For Tuition Funding

The IDEA, 20 U.S.C. § 1400 *et seq.*, directs that children with disabilities are entitled to a FAPE that is comprised of "special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(d)(1)(A); see also Forest Grove Sch. Dist. v. T. A., 557 U.S. 230, 238 (2009); Sch. Comm. of Burlington v. Dept. of Educ., 471 U.S. 359, 367 (1985); Bd. of Educ. v. Rowley, 458 U.S. 176, 188 (1982). Participating states must ensure that disabled children receive personally tailored public education, in conformity with and through the

---

[1] The DOE's funding responsibility for N.B.'s placement at JRC prior to July 1, 2012 is what is at stake in the instant motion.

use of individualized education programs. 20 U.S.C. § 1401(9)
and (14); Rowley, 458 U.S. at 207. In New York State, the
formulation of IEPs is delegated to a local CSE, consisting of
school board representatives, educators, a psychologist, and
parents. N.Y. Educ. Law § 4402. The CSE evaluates students'
educational status and areas for improvement. N.Y. Educ. Law §
4402(1)(b)(1). The CSE creates an IEP which outlines the
student's goals for the upcoming SY as well as recommendations
designed to facilitate the student fulfilling those goals and
making educational progress. 20 U.S.C. § 1414(d).

Parents may challenge the offered IEP by filing a due
process complaint and then proceeding to a hearing before an
IHO. See 20 U.S.C. § 1415(b)(6)(A) and (f)(1)(A); N.Y. Educ. L.
§ 4404(1)(a). The IHO's decision may be appealed by either
party to the SRO, who independently reviews the findings and
decision rendered by the IHO. 20 U.S.C. § 1415(g)(1); N.Y. Educ.
L. § 4404(1)(c). The SRO is empowered to modify "any
determination of the impartial hearing officer" regarding the
selection of an appropriate program or service. N.Y. Educ. L. §
4404(2). While the SRO's decision is considered final, a party
aggrieved by that decision may bring an action for relief in

10

state or federal district court. 20 U.S.C. § 1415(i)(1)(B),
(2)(A).

Parents dissatisfied with a school district's program
may unilaterally place their child in a private school and then
seek retroactive tuition funding from the school district. 20
U.S.C. § 1412(a)(10)(C). A school district is required to pay
for the program selected by a parent *only* if: (1) the
educational program recommended by the board of education was
inadequate or inappropriate,(2) the program selected by the
parent was appropriate, and (3) the equities support the
parent's claim. These three factors comprise the
"*Burlington/Carter*" test. Burlington, 471 U.S. 359; Florence
County Sch. Dist. v. Carter*,* 510 U.S. 7, 12-13 (1993); Gagliardo
v. Arlington Sch. Dist., 489 F.3d 105, 114 (2d Cir. 2007);
Walczak v. Florida Union Free Sch. Dist., 142 F.3d 119, 129 (2d
Cir. 1998).

**Standard of Review**

When reviewing a motion brought pursuant to FRCP
12(c), a court applies the same standard as applied to its
review of a motion to dismiss brought pursuant to Fed. R. Civ.
P. 12(b)(6).  Heller v. Conrail, 331 Fed. Appx. 766, 767-8 (2d

11

Cir. 2009) (citing Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994)). A court must "accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." Phelps v. Kapnolas, 308 F.3d 180, 184 (2d Cir. 2002) (internal quotes omitted). However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  This "plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.  A pleading "must set forth enough information to suggest that relief would be based on some recognized legal theory." Bogdan v. Stolt-Nielsen S.A., No. 01 CV 1910, 2005 U.S. Dist. LEXIS 7460, at *6 (E.D.N.Y Mar. 29, 2005) (quoting Telsat v. Entertainment & Sports Programming Network, 753 F. Supp. 109, 111 (S.D.N.Y. 1999)). A plaintiff must additionally assert enough facts to "nudg[e] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

12

Finally, a court may not take as true "conclusions of law or unwarranted deductions of fact." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (internal citation omitted).

**The Court Has Jurisdiction**

Plaintiff's First Claim is an appeal to this Court of a final decision issued by New York State's two-tier system of administrative review that is available to the parent of a disabled school-age child who disagrees with the actions of the local school district.  Plaintiff requested a typical remedy for a denial of FAPE under the IDEA – namely, private school placement at public expense.  The IHO and the SRO issued final decisions on the merits of the FAPE claim, *i.e.* factual and legal determinations with respect to the three-pronged evidentiary standard enunciated by the Supreme Court in Burlington.  This Court has therefore subject matter jurisdiction pursuant to 20 U.S.C. §1415(i)(2)(A) to proceed and develop the specific type of relief that is appropriate under the present circumstances to ensure that Plaintiff and her child are fully compensated for Defendant's past violations of their

13

rights under the IDEA.  See Burlington, 471 U.S. at 369 (holding

that Congress conveyed "broad discretion on the court" to "grant

such relief as it determines is appropriate").[2]


**The Exhaustion Requirement Supports The SRO Decision**


        The mistake made by Plaintiff, as conceded above, was

the failure to pursue direct tuition for the 2011-12 SY at JRC

pursuant to the Burlington/Carter test during the underlying

administrative proceeding.  As Papakhin stated during the IHO

hearing, Plaintiff was not at that time seeking tuition payment

because, as he stated, "this is not a Carter/Burlington

reimbursement case."  Indeed, such a remedy was unavailable to

Plaintiff at the time of the IHO hearing, since N.B. was not yet

attending JRC.  See 20 U.S.C. § 1412(a)(10(C)(ii) (reimbursement

an available remedy where parents "*enroll the child* in a private

elementary school or secondary school without the consent of or

referral by the public agency") (emphasis added); see also 34

C.F.R. § 300.148(c) (same).  Further, though courts have

recognized a parent's right to direct tuition payments from a

---

[2] Defendant has not cited a single decision in which a federal
court dismissed an appeal from a final administrative decision
on the ground of failure to exhaust administrative remedies
because the parent made a unilateral placement while the
administrative review was pending.

school district under the IDEA, as opposed to merely
reimbursement for tuition payments parents have already made,
direct payment of tuition similarly requires that parents have
actually enrolled the student in the unilateral placement.  See
A ex rel. D.A. v. New York City Dep't of Educ., 769 F. Supp. 2d
403, 428 (S.D.N.Y. 2011) (direct tuition funding an available
remedy where parent lacks financial ability to pay tuition costs
up front, "and in the rare instance where a private school is
willing to enroll the student and take the risk that the parents
will not be able to pay tuition costs"); see also P.K. v. New
York City Dep't of Educ., 819 F. Supp. 2d 90, 102, 117-8
(E.D.N.Y. 2011) (awarding direct tuition funding where parent
had enrolled student in unilateral placement and met
Burlington/Carter test).

        Plaintiff did not assert a claim for tuition payment
at the time of the IHO hearing because such relief was not then
available.  According to the DOE, Plaintiff was free to request
an IHO hearing following her enrollment of N.B. at JRC, at which
time the remedies she now seeks would have been available to
her.  See NY Educ. L. § 4404; 34 C.F.R. § 300.507; 34 C.F.R. §
300.513(c); Memorandum of Law In Support of Defendant's Motion

for Judgment on the Pleadings and Defendant's Request for a Stay
of Discovery ("Def. Mem.") at 13.

As noted above, the SRO found that the issue of
tuition reimbursement was not ripe for review by the IHO, the
requisite Burlington/Carter elements not having been
established.  Jurisdiction over the appeal has been established.
The necessary elements of tuition reimbursement have not.  The
motion to dismiss for lack of jurisdiction is therefore denied.

**The Motion To Dismiss The Second Claim Is Denied**

Plaintiff's Second Claim is a non-administrative
review claim for DOE's responsibility for the placement for two
months, May and June 2012, see Compl. ¶¶ 159-165, and seeks a
remedy for the DOE's failure to comply with the IHO Decision
dated January 20, 2012, which ordered:

- "Unless [Parent] and the Department of Education
  agree that the documentation from Kings County
  Hospital is a sufficient substitute for
  Department of Education evaluations, the CSE is
  to arrange for the child to be evaluated within
  14 days of the receipt of this Order;"

- "The CSE is to reconvene an IEP meeting within
  seven days of the completion of those evaluations
  or within 14 days of the receipt of this Order if

16

> the Kings County Hospital Records are deemed to be sufficient;"

- "At the IEP meeting the CSE must reconsider the child's classification and recommended program in light of the evidence in the record, the testimony at the hearing and the evaluations. The CSE is also to consider . . . . [B]ased on the foregoing the CSE is to determine an appropriate program taking into consideration both non-public day and residential programs."

Porter Decl. Ex. 4 at 19-20.

Although the DOE has referred to its motion as seeking "judgment on the pleadings," the DOE is in fact seeking dismissal of the Second Claim based solely upon the ground that there is documentary evidence that allegedly refutes material factual allegations in the Complaint. The DOE does not contend that the Second Claim, assuming the truth of the factual allegations in the Complaint, does not state a cause of action as a matter of law. This branch of the motion is a *de facto* motion for partial summary judgment under Fed. R. Civ. P. 56. However, no Statement of Material Facts has been submitted as required by Local Civil Rule 56.1. Moreover, in support of its motion the DOE has proffered at least four documents that are not part of the administrative record. Furthermore, the Papakhin declaration presents material issues of fact that are

17

in dispute. The motion is therefore both defective and premature.

DOE has contended that its documentary exhibits show that the DOE complied with the IHO Order, and that its "Implementation Manager," Kevin McGinn, and other employees, took all of the steps required of it in a timely manner. DOE also relies upon a notice scheduling an evaluation session in New York City on February 2, 2013, which was allegedly acknowledged by the Parent. Its position is that the Parent prevented the DOE from implementing the order.

According to Papakhin's declaration, N.B. is a seriously emotionally disturbed youth who began an education and treatment program at JRC on December 29, 2011. As of January 24, 2012, Papakhin was informed of the delicate nature of this initial stage of treatment from discussions with her clinician at JRC, Gregory Todisco. Transporting her from the Boston area to NYC for the evaluation and back again would be disruptive of her transition, and removing a child with a history of elopement from a secure facility for such a trip would pose a flight risk. McGinn e-mailed Papakhin and conducted an exchange with respect to whether a new evaluation of N.B. was needed to implement the

IHO decision.  There is a dispute as to the conclusions reached
in this exchange and the responsibility for the lack of further
evaluation.  The existence of this dispute bars a grant of
partial summary judgment.

**The Available Relief**

The Plaintiff has urged that the Court grant relief
and direct the requested tuition reimbursement, and suggests
that the Court take evidence to meet the Burlington/Carter
requirements.  Plaintiff's Memorandum in Opposition to
Defendant's Motion for Judgment on the Pleadings ("Pl. Opp.") at
15.

Plaintiff has acknowledged that she has not submitted
any evidence regarding her inability to pay JRC tuition, a
required element of a claim for direct tuition funding, see ex
rel. D.A., 769 F. Supp. 2d at 428, but contends that "it is
doubtful that Defendant actually believes" Plaintiff has such
resources, and that "proving this fact is simple."  Pl. Opp. at
15.  However, Plaintiff has not presented any evidence on this
issue at any level of administrative review.  In addition,
Plaintiff's contention that assessment of this issue does not

19

require educational expertise is contradicted by the case upon

which Plaintiff expressly relies in her DPC.  In that case, the

court found that:

> The determination whether a parent is not
> financially able to front the cost of
> private placement should be made in the
> first instance by the IHO or SRO; i.e., the
> parent should exhaust the state
> administrative procedures before raising the
> claim in court proceedings.  Though the
> specifics of the calculation are not given
> here, such evaluations are regularly done in
> the educational setting relative to
> determinations of financial aid.  Schools
> should draw from similar experience and
> expertise in order to fashion an appropriate
> calculus here.

Connors v. Mills, 34 F. Supp. 2d 795, 805-06 (N.D.N.Y. 1998).

Whatever equitable powers the Court possesses, the

statutory scheme under which tuition reimbursement is achieved

requires that the initial presentation to be made in the

administrative process.  In view of the grant of reimbursement

for N.B.'s 2012-13 SY to require further administrative

proceedings for a tuition refund for half of the 2011-12 SY may

seem an unnecessary formalism.  However, no process is presently

before the Court under which such relief can be achieved.

Given the realities surrounding the 2012-13 SY, it might well be assumed that the administrative process for reimbursement of the last half of the 2011-12 SY will be expeditious and brief.  While one is taught not to rely on assumptions, it is hoped that further appellate review will not be necessary.

**Conclusion**

Based upon the conclusions set forth above, the motion of the DOE to dismiss the Complaint is denied.

It is so ordered.

New York, NY
September /3 , 2013

_____
        ROBERT W. SWEET
            U.S.D.J.

21