UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X

A.R., as Parent and Natural Guardian
of N.B., a Minor,

                Plaintiff,


   - against –


NEW YORK CITY DEPARTMENT OF EDUCATION,
a/k/a THE BOARD OF EDUCATION OF THE
CITY SCHOOL DISTRICT OF THE CITY OF
NEW YORK,

                Defendant.

------------------------------------X

                          12 Civ. 7144

                          <u>OPINION</u>



A P P E A R A N C E S:

      <u>Attorney for Plaintiff</u>

      ARTHUR BLOCK ATTORNEY AT LAW
      437 Madison Avenue, 29th Floor
      New York, NY  10022
      By:  Arthur R. Block, Esq.

      LAW OFFICE OF ANTON PAPAKHIN
      1359 Coney Island Avenue
      Brooklyn, NY  11230
      By:  Anton Papakhin, Esq.


      <u>Attorney for Defendant</u>

      ZACHARY W. CARTER
      CORPORATION COUNSEL OF THE CITY OF NEW YORK
      100 Church Street
      New York, NY  10007
      By:  Eric Porter, Esq.

**Sweet, D.J.**

The plaintiff A.R. ("Plaintiff") has moved pursuant to Rule 7 of the Federal Rules of Civil Procedure and 20 U.S.C. § 1415(i)(3) for attorneys' fees and costs against defendant New York City Department of Education ("DOE" or the "Defendant") in the amount of $313,482.50.

Upon the conclusions set forth below, the motion of the Plaintiff is granted in part and denied in part, resulting in an award of $217,388.25.

**<u>Background and Prior Proceedings</u>**

The facts and prior proceedings in this action are set forth in this Court's prior decision and order dated September 16, 2013, familiarity with which is assumed.  (<u>See</u> Dkt. No. 24.)  Previously stated facts relevant to this motion and intervening facts are stated below.

Plaintiff brought this action under the Individuals with Disabilities Education Act ("IDEA") on September 21, 2012, seeking tuition funding in the amount of $129,080.30 for the full cost of her granddaughter N.B.'s tuition for a six month

1

stay at the Judge Rotenberg Center ("JRC").  JRC is a
residential facility located in Massachusetts, at which
Plaintiff unilaterally placed N.B. for the latter half of the
2011-12 school year.  Plaintiff's complaint constituted an
appeal from an administrative decision by the New York State
Education Department's Office of State Review.

On January 9, 2014, the parties entered into a
stipulation and order of partial settlement (the "Settlement
Agreement") whereby all claims brought by Plaintiff, or which
could have been brought by Plaintiff in connection with the
action, were dismissed with prejudice in exchange for certain
consideration, with the exception of Plaintiff's attorneys' fees
and costs incurred in connection with the action, which remained
the sole issue in dispute.  (See Dkt. No. 28.)

Defendant contended that retainer agreements between
Plaintiff's counsel and the Plaintiff (the "Retainer
Agreements") provided that Plaintiff's counsel had already been
paid by JRC for their work on the case and requested materials
related to these payments.  Defendant subsequently filed a
motion to compel the production of such documents.

2

On March 19, 2014 and March 26, 2014, the Court granted the DOE's motion to compel and directed Plaintiff's counsel to produce records related to their respective agreements and payment relationships with JRC.  On March 20, 2014, Plaintiff's counsel produced their respective letter agreements with JRC ("JRC Agreements").  On April 2, 2014, they produced their respective invoices sent to JRC for work done on Plaintiff's case.

The instant motion for attorneys' fees was filed on February 24, 2014 and was marked fully submitted on May 14, 2014.  Since the submission of the motion, Plaintiff's counsel has submitted supplemental time logs, to which Defendant has responded, which are addressed by this opinion.

**Applicable Standard**

A prevailing party[1] who is the parent of a child with a disability in any action brought under the IDEA may be entitled to attorneys' fees and other costs.  20 U.S.C. § 1415(i)(3)(B)(i)(I).  District courts are afforded "considerable

---

[1] Plaintiff qualifies as a prevailing party as per the Settlement Agreement. (See Dkt. No. 28 ¶ 3 ("For the purposes of awarding attorneys' fees in connection with the . . . [a]ction, the parties agree that Plaintiff is a prevailing party.").)

3

discretion" in determining the amount of fees in any given case.
Barfield v. N.Y. City Health & Hosps. Corp., 537 F.3d 132, 151
(2d Cir. 2008).  Courts must determine whether fees are
"reasonable" and "based on rates prevailing in the community in
which the action or proceeding arose for the kind and quality of
services furnished" and additionally, whether the number of
hours expended is reasonable.  20 U.S.C. § 1415(i)(3)(B)-(C);
G.M. v. New Britain Bd. of Educ., 173 F.3d 77, 84 (2d Cir. 1999)
(noting that district courts should multiply the number of hours
reasonably expended by a reasonable hourly rate to derive a fee
award).

    The Court may also examine equitable considerations
relevant to an application for attorneys' fees.  See Faraci v.
Hickey-Freeman Co., 607 F.2d 1025, 1028 (2d Cir. 1979) ("the
express grant of [legislative] authority to award fees presumes
continued application of equitable considerations in appropriate
cases, both to effectuate the broader legislative purpose and to
do justice in the particular case").  Ultimately, "courts apply
the lodestar method, whereby an attorney fee award is derived by
multiplying the number of hours reasonably expended on the
litigation [by] a reasonable hourly rate."  A.R. ex rel R.V. v.
New York City Dep't of Educ., 407 F.3d 65, 79 (2d Cir. 2005)
(internal quotation marks and citations omitted).

4

**Discussion**

**1. The JRC Agreements**

The relevant terms of the JRC Agreements for each of Plaintiff's counsel, Arthur R. Block ("Block") and Anton Papakhin ("Papakhin"), are briefly summarized below.

Block's agreement notes that Block has been working with JRC for over four years. (Porter Decl. Ex. A. at 1.)  The agreement notes, with respect to the representation of parents:

> . . . the attorney-client relationships is between
> me and each parent.  The relationship between me
> and JRC is a payment agreement,  There is a
> retainer agreement between my firm and each of the
> parents setting forth, among other facts: a) the
> parent is my client with respect to the
> representation; b) the parent has no obligation to
> pay my fees, but it is obligated to cooperate in
> my firm's claim for prevailing party attorney's
> fees against the school district; c) JRC is
> advancing part of the fee for my professional
> services; d) JRC's advance of fees does not
> entitle it to interfere with my independent
> professional judgment in the parent's case; e) the
> parent consents to my sharing of confidential
> information about the case with JRC
> representatives as needed to prosecute the
> parent's claims; f) the decision of a parent to
> place the child at JRC was made prior to my
> representation of the parent and without my
> involvement; and g) neither I nor the parent is
> aware of any conflict of interest between my

5

> representation of the parent and my attorney-
> client relationship with JRC in other matters.

(Id. at 2.)

Block's agreement also notes that the hourly rate charged to JRC is less than his market rate and notes that, in 2011, Block's market rate was $450-500.  (Id.)

Papakhin's agreement notes, in relevant part, that Papakhin "will do [his] utmost to protect [JRC's] interests." (Porter Decl. Ex. B. at 3.)  However, the agreement also states that JRC must remember that it is "not [Papakhin's] client and [he] will not engage in any conduct that conflicts with [his] professional responsibility to parents and their children." (Id.)

Papkhin's agreement further states that the non-refundable fee for every case seeking public funding for residential placement of a new student at JRC will be $5,000 and if the case proceeds to an impartial hearing, another $5,000 will be charged.  (Id. at 2.)  The agreement notes that the "total flat fee of $10,000 will be based on an hourly rate of $200 per hour for time spent by [Papakhin]" and that the fee is

6

"inclusive of all legal fees, out-of-pocket costs and disbursements." (Id.)

## 2. **Equitable Considerations Do Not Bar An Award Of Fees In This Case**

Defendant contends that the JRC Agreements and invoices indicate that Block has represented both JRC and parents such as plaintiff in a variety of matters since at least 2007, and is paid by JRC for these efforts and that Papakhin has brought claims on behalf of parents seeking tuition funding for JRC since at least 2009, and is also paid by JRC for his efforts. Defendant contends that the "relationship between these attorneys and JRC . . . is wholly unique in the DOE's experience." (Def.'s Opp'n 3; Porter Decl. Exs. A-B.) The JRC Agreements and invoices reflect that JRC has paid fees to Block and Papakhin in the instant action and that Block and Papakhin have no obligation to repay such fees unless they recover fees from the DOE. (Porter Decl. Ex. A. at 2; Ex. B. at 2.)

Defendant raises a number of equitable arguments in opposition to Plaintiff's fee motion, including that: (1) Plaintiff's counsel's agreements with the JRC raise inherent conflicts of interest, (2) JRC's payment of fees was not necessary to provide Plaintiff with representation, and thus

7

Plaintiff's case does not implicate the purpose of the IDEA's
fee-shifting provision, and (3) the fees Plaintiff seeks do not
further the purpose of the fee-shifting provision.

### a. The JRC Agreements Do Not Raise Inherent Conflicts of Interest

Defendant contends that the JRC Agreements, read
together with the Retainer Agreements, implicate several New
York Rules of Professional Conduct ("NYCRR").  Defendant points
to three conditions that it contends create a conflict of
interest: (1) provisions in the Retainer Agreements reflect that
Plaintiff's counsel may withdraw from representing any or all of
the parents associated with JRC, including Plaintiff, should JRC
fail to pay counsel's fees, essentially creating a risk that a
parent may lose her counsel midstream because the paying third
party no longer considers the parent's claim to be a prudent
investment; (2) the long-standing relationship between
Plaintiff's counsel and JRC creates the inherent possibility of
conflict with the best educational interests of the parents and
their child, in that the attorneys may be incentivized to direct
a parent to JRC when that residential facility may not, in fact,
be the most appropriate placement for a student; and (3) the
Retainer Agreements "raise serious questions" regarding whether

8

Plaintiff has in fact provided informed consent to the third party relationship between Plaintiff's counsel and JRC.  (See generally Def.'s Opp'n 4-10.)

Defendant cites to several provisions of the NYCRR in support of its arguments, including Rule 1.7, Rule 1.16(c)(5), and Rule 1.8(f).  As discussed below, none of these provisions is implicated in this action or timely invoked by Defendant.

Defendant contends that Plaintiff's attorneys' agreements with JRC authorize them to withdraw "midstream" from representing Plaintiff if JRC chooses to not pay the attorneys' fees in contravention of Rules 1.7 and 1.16.  (Def.'s Opp'n 5-7.)

Pursuant to Rule 1.7 of the NYCRR, an attorney may not represent a client if a "reasonable lawyer would conclude that either: (1) the representation will involve the lawyer in representing differing interest; or (2) there is a significant risk that the lawyer's professional judgment on behalf of a client will be adversely affected by the lawyer's own financial, business, property or other personal interests."  22 NYCRR § 1200.0 Rule 1.7(a).  Rule 1.16(c)(5) states a lawyer may withdraw from representing a client when "the client

9

deliberately disregards an agreement or obligation to the lawyer
as to expenses or fees."

Defendant's contentions are speculation about what
might have happened had JRC chosen to cease payment.  JRC did
not fail to pay advances it had agreed to make throughout the
duration of the litigation.  Defendant does not allege that
Plaintiff's counsel withdrew "midstream."[2]

Defendant's contentions that Block and Papakhin's
relationships with JRC create the inherent possibility of
conflict with the best educational interests of the parent and
her child have not been established in this action.  Defendant
states that the "lucrative and long-standing relationship"
between Block, Papakhin and JRC may incentivize the attorneys to
direct a parent to JRC when that residential facility may not,
in fact, be the most appropriate placement for a student.

---

[2] In any case, in neither of the Retainer Agreements does it say that
nonpayment by JRC is a ground for withdrawal of representation of A.R.  The
language emphasized by Defendant in the JRC Agreements as problematic can be
read to indicate that if JRC stops making payments that are due under the
agreement, then JRC alone does not have the right to stop the attorney from
seeking to withdraw from representing one or more of the parents.  Such a
provision does not speak to whether the attorney would in fact withdraw his
representation of any of the parents if JRC stopped advancing part of his
fee, or whether he would be entitled to withdraw from representation.
Indeed, both Retainer Agreements, as described further below, state that the
relationship with JRC will not interfere with the attorneys' representation
of A.R.  (See Block Decl. Ex. E; Papakhin Decl. Ex. D.)

However, the facts in this case appear indicate otherwise.  A.R.
was referred to JRC by the psychiatrist who treated N.B. at
Kings County Hospital.  A.R. did not meet Papakhin until three
months after JRC gave A.R. an offer of admission.  (See Papakhin
Reply Decl. ¶ 13; Block Reply Decl. ¶¶ 15-19.)  The fact that
Papakhin's agreement with JRC fails to include the phrase "the
decision of the parent to place the child at JRC was made prior
to my representation of the parent and without my involvement,"
as it does in Block's agreement with JRC, does not establish a
conflict.  Defendant's assertion that "Papakhin's billing
records reflect that he contacted JRC to inquire about the
availability of space there for N.B. shortly after meeting
plaintiff for the first time" does not establish a conflict of
interest arising out of the JRC placement.  (See Def.'s Opp'n 7-
8.)

        Defendant further asserts that the Retainer Agreements
implicate informed consent rules and contends that the Retainer
Agreements "(1) fail to explain the availability of alternative
counsel, (2) provide only minimal detail regarding the nature of
their relationship with JRC, (3) do not appear to disclose the
possibility that either attorney may withdraw if JRC stops or
delays paying fees, and (4) do not appear to disclose the actual
amount JRC pays them," which, Defendant contends, implicates

Rule 1.8(f), in addition to Rules 1.7 and 1.16 cited above.
(Def.'s Opp'n 8.)

Rule 1.8(f) provides that a lawyer "may not accept
compensation for representing a client, or anything of value
related to the lawyer's representation of the client, from one
other than the client unless: (1) the client gives informed
consent; (2) there is no interference with the lawyer's
independent professional judgment or with the client-lawyer
relationship; and (3) the client's confidential information is
protected as required by Rule 1.6."

The Defendant has failed to establish a lack of
informed consent, as its claim is directly contradicted by the
Retainer Agreements that A.R. signed.  (See Block Decl. ¶¶ 86-
87, Ex. E; Block Reply Decl. ¶¶ 63-63.)  The Retainer Agreements
inform A.R. about the attorneys' relationship with JRC, each
describing it as a separate relationship from the one each
attorney has with A.R.  Each Retainer Agreement affirms that
A.R. and N.B. are the clients and states that certain
confidential information that should be shared for purposes of
litigating the claim.  (Block Decl. Ex. E; Papakhin Decl. Ex.
D.)  Neither Retainer Agreement lists non-payment by JRC as a

12

basis for withdrawal in the "Ending of Attorney-Client
Relationship" section.[3]

Defendant has not established a conflict of interest
nor an equitable basis to deny a fee award to Plaintiff's
counsel.[4]

### b. The IDEA's Fee-Shifting Provision Does Not Bar JRC's Payment Of Fees

Defendant contends that JRC's payment of fees to
Plaintiff's counsel was not necessary to provide Plaintiff with
representation and, thus, the representation does not implicate
the purpose of the fee-shifting provision.  Specifically,
Defendant contends that it is unlikely that Plaintiff would have
been deterred from bringing her action had JRC not paid her fees
and asserts that the IDEA's fee shifting provision has created a

---

[3] In the case of Block's Retainer Agreement with A.R., the language regarding
conflict of interest is particularly explicit.  Block's Retainer Agreement
with A.R. states that JRC is aware that it may not interfere with Block's
exercise of independent professional judgment while representing A.R., states
a belief that there is no present conflict of interest, asks the client to
contact Block if she is aware of a conflict, and provides her signature on
the retainer letter will "indicate [her] consent to [Block's] concurrent
relationship with JRC and to the advancement of part of the legal fees by
JRC."  (Block Decl. Ex. E.)

[4] Additionally, it is worth noting that Block contends that Defendant's
arguments regarding conflict of interest are not timely because Defendant has
known of Block and Papakhin's relationship with JRC since prior to the
commencement of the instant litigation.  (See Block Reply Decl. ¶¶ 55-58, Ex.
F.)

13

market of non-conflicted attorneys at her disposal.  Defendant,
in effect, seeks to bar JRC from providing interim financing for
the fees of Plaintiff's counsel.

          The purpose of the IDEA's attorneys' fees award
provision – like other civil rights fee-shifting provisions – is
to attract effective legal representation and thereby encourage
private enforcement of civil rights statutes.  See Hensley v.
Eckerhart, 461 U.S. 424, 445 (1983).  Civil rights attorneys'
fee awards are intended to attract qualified counsel even in
cases where the anticipated monetary recovery may otherwise be
too small to create an incentive for representation.  See Kassim
v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005); see
also Milwe v. Cavuoto, 653 F.2d 80, 84 (2d Cir. 1981) ("The
award of counsel fees is not intended to punish the defendant in
any way.  Rather it is to permit and encourage plaintiffs to
enforce their civil rights.  To declare those rights while
simultaneously denying the award of fees would seriously
undermine the declared congressional policy.") (citations
omitted).  "Where a plaintiff has obtained excellent results,
his attorney should recover a fully compensatory fee."  Hensley,
461 U.S. at 435.

14

Defendant cites to a recent decision by the Honorable Kevin Castel to support its contention there is a rich market of firms and attorneys specializing in special education litigation.  The precedent cited by Defendant does not in fact preclude fees on the basis of a rich market; rather, Judge Castel considered the existing market as one factor on which to make a determination of a reasonable hourly rate.  See K.F. v. New York City Dep't of Educ., No. 10 Civ. 5465, 2011 WL 3586142, *3-6 (S.D.N.Y. Aug. 10, 2011).  Defendant's assertion that it is likely that Plaintiff would not have been deterred from bringing her action had JRC not paid her counsels' fees, because she could have sought other options from within that rich market, fails to establish a basis for a denial of fees.  Defendant has not cited any applicable authority to support its contention that the arrangement with JRC, under which attorneys' fees were advanced by JRC, should bar Plaintiff's counsel from recovering fees because Plaintiff could have chosen another attorney who did not benefit from that arrangement.

Defendant separately contends that the IDEA limits the types of parties who can recover fees only to parents and, in certain situations, state and local agencies and that, as a result, JRC should be treated as an impermissible stand-in litigant.  To support its contentions, Defendant analogizes to

15

case law regarding the Equal Access to Justice Act ("EAJA"), asserting that JRC is an ineligible third party in effect seeking a fee award through an eligible surrogate, and the Court should employ a "deterrence" analysis, where it would "focus on whether the plaintiff would have been deterred from bringing the action had the fee-shifting provision not been available," as in EAJA cases.  If the Plaintiff would not have been deterred, Defendant contends, the Court should decline to award fees because the purpose of the fee-shifting provision – to remove from a plaintiff's shoulders the deterrent effect of the cost of litigation – is not implicated here.

Neither party has been able to point to case law in our circuit that deals squarely with this issue.  Other courts, however, have held that third party advancement of legal fees to a civil rights attorney is not relevant to the calculation of a prevailing party attorney's fee award.  See Yankton School Dist. v. Schramm, 93 F.3d 1369, 1377 (8th Cir. 1996) (holding that the fact that plaintiffs received free legal representation by a publicly funded group did not affect their right to fees under the IDEA); see also Brewster v. Dukakis, 786 F.2d 16 (1st Cir. 1986); see also Continental Bldg. Co., Inc. v. Town of North Salem, 150 Misc.2d 145, 567 N.Y.S.2d 328 (1991), aff'd as modified 211 A.D.2d 88 (3d Dep't 1995).

16

In <u>Brewster</u>, an association of service providers made
payments to a public interest law firm to provide free
representation for the plaintiff class of individuals with
disabilities with regard to the ongoing implementation of an
institutional reform consent decree.  The defendants moved for
discovery of the details of the third party payments and
arrangements.  The district court denied the discovery motion
and awarded attorneys' fees.  The First Circuit, while noting
that it would have been preferable for the district court to
have allowed some limited discovery only to verify that the
bills accurately reflected work on behalf of the plaintiff
class, affirmed the decision.

Defendant contends that analogy to the situation in
<u>Brewster</u> is misplaced.  In particular, Defendant asserts that a
Court Monitor in <u>Brewster</u> recommended that the retainer
agreement with the fee-paying third party be terminated because
of possible conflicts of interest underscores its arguments
regarding conflict of interest in this case.  (Def.'s Opp'n 9-
10.)  However, the <u>Brewster</u> court did, in fact, ultimately award
attorneys' fees to plaintiffs' counsel for work they performed
on behalf of the class that had been paid by the third party.

17

Brewster has also been followed by at least one New

York State Court.  In Continental, both the trial court and the

appellate court rejected the local government's assertion that

it did not have to pay attorney's fees to a prevailing civil

rights plaintiff pursuant to 42 U.S.C. § 1988 because a third

party had funded a portion of the plaintiff's legal

representation.  Relying on Brewster, the state courts found

that the principle that civil rights attorney's fees cannot be

reduced because funding of legal services was provided by public

interest law firms, also extended to and included situations

where such funding was provided by other kinds of third parties.

The trial court stated:

> Finally, this Court cannot agree with defendants'
> allegations that the third party funds contributed to
> pay a portion of plaintiff's expenses, including
> compensation to plaintiff's attorney bar such an
> award.  The federal courts have determined that the
> contribution of fees by a public service organization
> to help defray a prevailing party's litigation
> expenses does not serve as a basis to deny an award of
> attorneys fees.  This determination has not been
> construed, limited or restricted so as to apply only
> to those narrowly circumscribed situations where such
> contributions have been made by a public service
> organization.  Nor will this Court do so here.

Continental, 150 Misc.2d at 150 (citations omitted).


To further support its argument for denying a fee

award, Defendant cites to Children's Center for Developmental

18

Enrichment v. Machle, 612 F.3d 518, 522 (6th Cir. 2010) for the
proposition that the IDEA "authorizes attorney's fees for
parents and, in certain situations, state and local educational
agencies . . . [and] does not authorize attorney's fees for
private schools." (Def.'s Opp'n 13.)  Children's Center,
however, is inapplicable to the instant case.

        In Children's Center, the school district placed a
child with special needs in a private school.  The private
school expelled the student and the parent sued the school
district and private school under, inter alia, the IDEA.  Both a
court and an administrative officer ruled that there was no IDEA
claim that could be stated against the private school.
Subsequently, the private school sued the parent for prevailing
attorney's fees under, inter alia, the IDEA.  The court found
that the private school was not entitled to attorneys' fees
under the statute.  Here, JRC did not expel N.B. against the
parent's wishes; it enrolled her as a unilateral placement at
the parent's request and assisted in engaging legal
representation.  A.R. did not sue JRC; A.R. sued Defendant, the
DOE.  JRC is not, in fact, a litigant in this action.

**3. Calculation Of Attorneys' Fees**

Courts in this circuit interpret the IDEA fee provision "in consonance with those of other civil rights fee-shifting statutes." I.B. v. New York City Dept. of Educ., 336 F.3d 79, 80 (2d Cir. 2003). Thus, courts must ask whether "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 895 n. 11 (1984); see also 20 U.S.C. § 1415(i)(3)(B)-(C) ("Fees awarded under this paragraph shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."). In so doing, courts must employ the "lodestar approach whereby an attorney fee award is derived by multiplying the number of hours reasonably expended on the litigation [by] a reasonable hourly rate" and then may adjust by other factors.[5]

---

[5] Blanchard v. Bergeron, 489 U.S. 87 (1989) suggests that the factors enumerated in Johnson may be relevant in adjusting a fee award. Johnson sets forth twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See Johnson, 488 F.2d at 717-19. These factors are taken under consideration, as appropriate.

Arbor Hill Concerned Citizens Ass'n v. County of Albany, 522
F.3d 182, 189 (2d Cir. 2007); see also Mr. B. v. East Granby Bd.
of Educ., 201 Fed. App'x 834, 837 (2d Cir. 2006).  However,
"'[t]he essential goal in shifting fees (to either party) is to
do rough justice, not to achieve auditing perfection.' . . .
Trial courts evaluating fee requests 'need not, and indeed
should not, become green-eyeshade accountants.'"  Torres v.
Gristede's Operating Corp., 519 Fed. App'x 1, 3-4 (2d Cir. 2013)
(quoting Fox v. Vice, 131 S. Ct. 2205, 2216 (2011)).

          The party seeking fees bears the burden of
establishing the reasonableness of the rate sought by
establishing that the requested rate is "in line with those
prevailing in the community . . . ."  Blum, 465 U.S. at 896 n.
11.  The reasonable hourly rate "is the rate a paying client
would be willing pay."  Arbor Hill, 522 F.3d at 190.

#### i. Block's Hourly Rate

          Block seeks a rate of $550 per hour, based on (1) over
35 years of experience successfully representing clients in
special education matters, (b) federal litigation experience,
including cases raising important legal-policy issues, (c)
scholarship in the field, and (d) law school teaching about

21

education policy litigation.  (Pl.'s Mem. 11-13; Pl.'s Reply 6;
see also Block Decl. ¶¶ 44-75.)

        Defendant objects to Block's proposed rate as
"unprecedented" and cites to various district court decisions to
support its contention that Block should be compensated at a
rate of $375 per hour for work done in 2012, $395 per hour for
work done in 2013, and $415 per hour for work done in 2014 or,
in the alternative, should be compensated at a maximum of $415
per hour for all work done on the instant case.  (See Def.'s
Opp'n 15-17.)  Additionally, Defendant contends that the Court
should look to the fees paid by JRC as a touchstone for what
Block should be paid for the instant action.

        Courts have awarded a range of fees in special
education cases for seasoned attorneys.  See, e.g., M.C. ex rel.
E.C. v. Dep't of Educ., 12 Civ. 9281, 2013 U.S. Dist. LEXIS
78605, *17-19 (S.D.N.Y. June 28, 2013) (awarding $375 per hour);
J.S. & S.S. ex rel. Z.S. v. Carmel Central Sch. Dist., 10 Civ.
8021 (Dkt. No. 46) (awarding $415 per hour); E.F. ex rel. N.R.
v. New York City Dep't of Educ., 11 Civ. 5243, 2012 WL 5462602,
*5 (S.D.N.Y. Nov. 8, 2012) (awarding $475 per hour); T.K. v.
N.Y. City Dep't of Educ., 11 Civ. 3964, 2012 U.S. Dist. LEXIS
47311, *16 (S.D.N.Y. Mar. 30, 2012) (awarding $415 per hour).

22

Given Block's more than 35 years of experience, as well as work on this case, a fee rate of $500 for all work performed is reasonable and commensurate with fee awards granted to attorneys with similar professional experience.[6]

### ii. **Papakhin's Hourly Rate**

Papakhin has amended his claim, seeking an hourly rate of $300, instead of $350, for this case only. Papakhin has approximately eight years of experience working in the field of special education law. (Papakhin Decl. ¶ 13.)

Defendant objects to Papakhin's rate as unreasonable and "far in excess" of a rate for an attorney of his experience. (Def.'s Opp'n 17.) Defendant asserts that a reasonable hourly rate for Papakhin is $165 per hour for his work at the administrative proceeding and $275 per hour for his work on the federal action or, in the alternative, Papakhin's hourly rate should not exceed $275 per hour for any work done on the case. (Def.'s Opp'n 17-18.)

---

[6] Defendant has contended that the Court consider the payments made by JRC to Block in determining the fee award. However, Block's retainer with JRC indicates that the rates in the retainer are set at a discounted rate. (See Block Reply Decl. Ex. A.) An initial discounted rate for a civil rights plaintiff does not create a ceiling for a later award. See Blanchard, 489 U.S. at 93.

Courts have also awarded a range of fees for attorneys with Papakhin's level of experience. See, e.g., G.B. v. Tuxedo Union Free Sch. Dist., 894 F. Supp. 2d 415, 432-33 (S.D.N.Y. 2012) ($300 per hour for an attorney with over fifteen years of experience); Underdog Trucking, L.L.C. v. Verizon Servs. Corp., 276 F.R.D. 105, 109-10 (S.D.N.Y. 2011) ($221 per hour for an attorney with six years of experience); DeCurtis v. Upward Bound Int'l, Inc., 09 Civ. 5378, 2011 U.S. Dist. LEXIS 114001, *22-25 (S.D.N.Y. Sept. 27, 2011) ($275 per hour for associate with approximately five years of experience). In light of precedent in this district, and Papakhin's level of experience, $275 per hour for all work performed during the course of the litigation is a reasonable hourly rate.

#### b. **Number Of Hours Reasonably Expended**

In order to determine reasonable fees, federal courts must determine the number of hours reasonable expended on a case. Reiter v. MTA New York City Transit Authority, 457 F.3d 224, 232 (2d Cir. 2006). In reviewing time expenditure, courts consider whether the time spent would have been reasonable under the standards of the private bar for work performed under full fee hourly billing engagements. See Grant v. Martinez, 973 F.2d

96, 99 (2d Cir. 1992) ("The relevant issue, however, is not
whether hindsight vindicates an attorney's time expenditures,
but whether, at the time the work was performed, a reasonable
attorney would have engaged in similar time expenditures."); see
also DiFillipo v. Morizio, 759 F.2d 231, 235-56 (2d Cir. 1985).
Attorneys who apply for compensation must provide
contemporaneous time records specifying for each attorney, "the
date, the hours expended, and the nature of the work done." Yea
Kim v. 167 Nail Plaza, Inc., 05 Civ. 8560, 2008 U.S. Dist. LEXIS
111900, *4 (S.D.N.Y. Nov. 24, 2008).  Courts have the discretion
to adjust fee awards upon review of documentation, but must take
care not to get bogged down in attempting to achieve auditing
perfection.  See Fox, 131 S. Ct. at 2216.


        Defendant contends that the number of hours that
Plaintiff claims are excessive and should be substantially
reduced because: (1) Plaintiff's counsel unreasonably protracted
the resolution of the controversy, (2) Plaintiff improperly
block billed, (3) the amount sought for the litigation of the
fees motion is excessive, and (4) Block spent an unnecessary
amount of time crafting an improper declaration.  Defendant also
asserts that Plaintiff's counsel improperly charged for removing
billing entries, attendance at oral argument, and reviewing a
hearing transcript.

### i. **Protraction Of Controversy**

The IDEA's fee-shifting provision provides that "the court shall reduce" attorneys' fees awarded whenever it finds that "the parent, or the parent's attorney, during the course of the action or proceeding, unreasonably protracted the final resolution of the controversy.  20 U.S.C. § 1415(i)(3)(F)(i) & (iv).  Defendant contends that Plaintiff unreasonably protracted the action by (a) opposing the DOE's discovery request for materials related to the payment relationship with JRC and the existence of any obligation to repay JRC in the event Plaintiff recovered fees from DOE and (b) moving to strike portions of the DOE's motion for judgment on the pleadings, separate from and in advance of Plaintiff's substantive opposition on that motion. (Def.'s Opp'n 18-20.)

While Plaintiff's motion to strike was not unreasonable and was dealt with at a later time at the Court's direction, Plaintiff's opposition to Defendant's motion to compel merits a reduction in fees as Plaintiff's opposition to providing responsive documents to the DOE's discovery requests, despite the broad scope of discovery under the Federal Rules of Civil Procedure, was unwarranted.  Accordingly, the 62.1 hours

26

billed by Block, and the 10.7 hours billed by Papakhin (see
Def.'s Opp'n 20), in opposing Defendant's motion to compel will
be deducted from Plaintiff's fee award.

### ii. Block Billing And Billing For Clerical Tasks

Block billing is the practice of "aggregating multiple
tasks into one billing entry" which makes it "exceedingly
difficult for courts to assess the reasonableness of the hours
billed." Wise v. Kelly, 620 F. Supp. 2d 435, 450 (S.D.N.Y.
2008). When block billing is identified, "courts have found it
appropriate to cut hours across the board by some percentage."
L.V. v. Dep't of Educ., 700 F. Supp. 2d 510, 525 (S.D.N.Y.
2010). Defendant contends that "Block's fee records present
repeated uses of 'block billing'" and seeks a 25% across the
board reduction of fees. (Def.'s Opp'n 23.) Additionally,
Defendant contends that Plaintiff's counsel have billed at their
regular rate for a significant number of hours dedicated to
performing clerical tasks, such as copying and filing work,
which should be billed at a rate of $100 per hour. Defendant
asserts that the Court should reduce at least 18.8 hours to a
rate of $100 or, in the alternative, apply an across the board
percentage reduction. (Def.'s Opp'n 22.)

27

The billing examples to which Defendant points, for the most part, contain descriptions of compensable work, grouped in one entry because the tasks were presumably (and apparently) related.  Though such grouping is not preferred, a 25% reduction is not appropriate.  Additionally, there are examples of clerical tasks interspersed within billing entries and, ideally, these types of tasks would be separated out.[7]  Because these clerical entries are relatively minor, the Court finds that a reduction of 10% for block billing and clerical entries is adequate and reasonable.[8]

### iii. Fees Motion

Defendant contends that the number of hours spent on litigating the fees claim are excessive.  While it is within the Court's discretion to reduce hours spent litigating fee applications, such a reduction is not warranted here.  Rather than simply drafting a standard fee application, which outlines

---

[7] For example, in entries highlighted by Defendant, Block bills 2.9 hours for work associated with motion to dismiss and discovery issues, including "After fax will not get through, discuss with Deputy Clerk alternative means for submitting to Court.  Prepare scan and send to Deputy Clerk with cover e-mails."  Block bills 2.75 hours on March 7, 2013 for work associated with a communication from Defendant, including "Communications with Chambers because of trouble faxing.  Scan and e-mail fax to Court and counsel."

[8] Defendant has asserted that hours spent by Block redacting his JRC invoices are clerical activities.  (Def.'s Opp'n 22.)  However, the decision as to what information should be redacted from documents at issue during litigation is properly within the domain of the attorney.

28

applicable legal standards and provides information and

documentation regarding hourly rates and hours billed, Plaintiff

here was also required to address Defendant's several defenses

in support of the contention that Plaintiff should not be

awarded any fees at all.  It is reasonable that such legal

research and analysis was conducted by Plaintiff and does not

warrant a reduction in fees claimed.

### iv. Block Reply Declaration

Defendant asserts, in response to Plaintiff's

supplemental billing records, that Block spent an excessive

amount of time drafting his reply declaration, and contends that

the reply declaration was improper due to inclusion of legal

arguments and assertions not based on his personal knowledge.

(Def.'s Opp'n to Supplemental Decl. 2.)  Defendant asserts that

items such as billing for legal research in support of the reply

declaration should not be credited and seeks a 50% reduction of

39.85 hours between April 18-30, 2014.

A reduction of 50% of 37.65 of the 39.85 hours

identified by Defendant is reasonable in this case.[9]  The purpose

---

[9] 2.2 hours identified by Defendant (entries for 0.7 hours and 1.5 hours on
April 18, 2014) appear to represent preliminary discussions and research

of a declaration is to set forth information known personally by the attorneys submitting them, not to make legal arguments properly left to motion papers.  See, e.g., Bosch v. Lamattina, 901 F. Supp. 2d 394, 403 (E.D.N.Y. 2012) ("Pursuant to Local Civil Rule 7.1, legal argument is to be set forth in a memorandum of law, while factual affirmations are to be set forth in affidavits.")

### v. **Removal Of Billing Entries, Oral Argument, And Hearing Transcript**

Defendant asserts that 0.3 hours billed by Block for time spent on April 11, 2014 reviewing prior billing entries ("Block Billing Revisions"), 2.5 hours billed by Papakhin on April 28, 2014 revising time entries ("Papakhin Billing Revisions"), 5.3 hours billed by Papakhin between May 12-14, 2014 for time spent preparing for and attending oral argument, and 0.4 hours billed by Block on May 21, 2014 reviewing the fees hearing transcript should all be deducted from the fee award. The Block Billing Revisions will be deducted as well as 50% of 2 of the 2.5 Papakhin Billing Revisions hours. [10]  The 5.3 hours

---

which are reasonable and are properly compensable at the full billing rate. (See Block Suppl. Decl. Ex. C.)

[10] At least 30 minutes of the time identified by Defendant (see Block Suppl. Decl. Ex. B) are reasonable and therefore compensable at the full billing rate.  Apart from correcting billing entries, Papakhin unilaterally revised

spent preparing for and attending oral argument and the 0.4
hours billed reading the hearing transcript, however, are
reasonable and constitute valid components of the fee award.

### vi. The Fee Award

Taking into account the above, the fee award is
calculated in the following manner:

| ATTORNEY | BILLING ACTIVITY | RATE | HOURS | AMOUNT ($) |
|---|---|---|---|---|
| Papakhin | IH 2011-12 | 275 | 19.90 | 5,472.50 |
| Papakhin | IH 2011-12 (Travel) | 137.50 | 1.00 | 137.50 |
| Papakhin | SRO Appeal | 275 | 35.50 | 9,762.50 |
| Papakhin | Federal (as of 2/20/14) & IH on Remand 2013-14 | 275 | 73.60 | 20,240.00 |
| Papakhin | Federal (as of 2/20/14) & IH on Remand 2013-14 (Travel) | 137.50 | 3.00 | 412.50 |
| Papakhin | Federal 2014 (2/21/14-3/31/14) | 275 | 14.50 | 3987.50 |
| Papakhin | Federal 2014 (2/21/14-3/31/14) (Travel) | 137.50 | 2.00 | 275.00 |
| Papakhin | Federal 2014 (4/1/14-5/22/14) | 275 | 23.90 | 6,572.50 |
| Papakhin | Federal 2014 (4/1/14-5/22/14) (Travel) | 137.50 | 1.00 | 137.50 |
| Block | SRO Appeal 2012 | 500 | 9.25 | 4,625.00 |
| Block | Federal 2012 | 500 | 23.25 | 11,625.00 |
| Block | Federal 2013 | 500 | 209.50 | 104,750.00 |
| Block | Federal 2014 (as of 2/20/14) | 500 | 42.00 | 21,000.00 |

billing at a lower rate, presumably in an effort to facilitate resolution of
the fees motion.  Such a gesture will not be penalized.

| Block | Federal 2014 (2/21/14-3/31/14) | 500 | 99.30 | 49,650.00 |
|-------|--------------------------------|-----|-------|-----------|
| Block | Federal 2014 (4/1/14-5/22/14) | 500 | 93.45 | 46,725.00 |
| | | | | **285,372.50** |
| **REDUCTIONS** | | | | |
| Motion to Compel (Block) | | | | -31,050.00 |
| Motion to Compel (Papakhin) | | | | -2,942.50 |
| Preparation of reply declaration (Block) | | | | -9,412.50 |
| Block Billing Revisions | | | | -150.00 |
| Papakhin Billing Revisions | | | | -275.00 |
| Block billing and clerical tasks (10%) | | | | -24,154.25 |
| **TOTAL** | | | | **217,388.25** |

## Conclusion

Based on the conclusions set forth above, the application of A.R. in the amount of $217,388.25 is granted.

It is so ordered.

New York, NY
October 2&, 2014

ROBERT W. SWEET
U.S.D.J.